**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1729**

In the Matter of the Welfare of the Child of:
J. P.-S. and J. D. F., Parents

**Filed June 6, 2016
Affirmed; motion granted
Hooten, Judge**

Nicollet County District Court
File Nos. 52-JV-13-134, 52-JV-14-1

T. Oliver Skillings, Skillings Law Office, New Ulm, Minnesota (for appellant J.P.-S.)

Michelle M. Zehnder Fischer, Nicollet County Attorney, Mark R. Thompson, Assistant County Attorney, St. Peter, Minnesota (for respondent Nicollet County)

Thomas K. Hagen, Rosengren & Kohlmeyer Law Office, Chtd., Mankato, Minnesota (for respondent J.D.F.)

Considered and decided by Hooten, Presiding Judge; Larkin, Judge; and Rodenberg, Judge.

**S Y L L A B U S**

In a child protection proceeding, the parental fee for costs associated with a court-ordered 24-hour out-of-home placement of a child who has an emotional disturbance is governed by Minnesota Statutes section 252.27 (2014 & Supp. 2015) only if the child is placed in a facility licensed by the Minnesota Department of Human Services. The parental fee for costs associated with any other placement is governed by Minnesota Statutes section 260C.331, subdivision 1 (Supp. 2015), unless the parent is exempt from paying fees under Minnesota Statutes section 256M.60, subdivision 6 (2014).

## OPINION

**HOOTEN**, Judge

In this appeal, appellant mother challenges the district court's determination of her parental fee for the out-of-home placements of her child. Appellant argues that the district court utilized the wrong statute in calculating her monthly parental fee and erred by failing to address her argument that she should have received a child support offset against her share of the costs. We affirm the district court's decision.

## FACTS

Appellant mother J.P.-S. (appellant) and respondent father J.D.F. (father) are the parents of J.F. Upon the dissolution of their marriage, appellant and father were awarded joint legal and joint physical custody of J.F. Father's court-ordered child support obligation was $275 per month from December 9, 2013, to April 30, 2014, and was $284 per month from May 1, 2014, to May 31, 2015.

On October 22, 2013, J.F. was adjudicated as a child in need of protection or services. On that date, her custody was transferred to respondent Nicollet County (the county) for placement in foster care. On December 6, 2013, J.F. ran away from her foster home. Later that day, the district court ordered that she be apprehended and placed at the Scott County Juvenile Alternative Facility (SC-JAF). On December 9, 2013, J.F. was apprehended and placed at SC-JAF. On January 17, 2014, the district court transferred J.F. to the "Main" program at Heartland Girls' Ranch (Heartland-Main). On August 14, 2014, J.F. graduated from Heartland-Main and entered the "Strides" program at Heartland Girls'

Ranch (Heartland-Strides). J.F. remained at Heartland-Strides until she graduated from high school on May 31, 2015, at which time she was returned to father's custody.

On January 13, 2014, the district court ordered appellant and father to contribute to the cost of J.F.'s out-of-home placements under Minn. Stat. § 260C.331 (2014 & Supp. 2015) and to work with the county to set their parental fees. The district court also assigned to the county any child support that father paid for J.F. On May 28, 2014, the county filed a motion seeking an order establishing appellant's parental fee in the amount of $650 per month, pursuant to section 260C.331 and the county's associated parental fee schedule. Appellant filed a responsive motion on July 16, 2014, seeking an order establishing her parental fee under section 252.27 and offsetting the assigned child support against her parental fee.

On May 13, 2015, the district court held an evidentiary hearing to determine whether the statute governing the calculation of appellant's parental fee was section 260C.331 or section 252.27. To make that determination, the district court first had to determine whether SC-JAF, Heartland-Main, and Heartland-Strides were licensed by the Minnesota Department of Human Services (DHS), the Minnesota Department of Corrections (DOC), or both. At the hearing, the county presented evidence that the three facilities were licensed solely by DOC and that, as of March 31, 2015, the county had been billed for and expended $85,673.80 for J.F.'s out-of-home placements. The county thus argued that section 260C.331 governs the calculation of appellant's parental fee, not section 252.27, which governs facilities licensed by DHS. Appellant disagreed, arguing that the sliding fee schedule set forth in section 252.27 should apply. Appellant claimed that a parental fee for

an out-of-home placement at *any* facility, even though licensed solely by DOC, is governed by section 252.27 if the facility contracts with other agencies providing DHS-licensed services. Appellant further argued that when placing a child with an emotional disturbance in 24-hour care outside the home, the district court is required to place the child in a facility licensed by DHS.

On September 10, 2015, the district court, accepting the county's evidence that the three facilities were licensed solely by DOC, filed an order applying the parental fee calculation set forth in section 260C.331 and setting appellant's fee at $650 per month for the period of December 9, 2013, through May 31, 2015, during which J.F. was placed at SC-JAF, Heartland-Main, and Heartland-Strides. The district court entered judgment against appellant in the amount of $11,400, which was later corrected to be $11,700, representing her total parental fee for the 18-month period during which J.F. was in out-of-home placement at these three facilities. The district court also entered judgment against appellant in the amount of $275, representing the amount that she owed the county for child support that she had received during the month of November 2013. Appellant filed this appeal on October 26, 2015.

On January 25, 2016, the county filed a motion to dismiss the appeal on the ground that appellant failed to timely serve the notice of appeal on the guardian ad litem and counsel for J.F. The county also moved to strike a letter from appellant's brief on the ground that the letter contains confidential settlement negotiations regarding the current dispute. On February 9, 2016, this court denied the motion to dismiss and deferred the motion to strike to the panel assigned to consider the appeal on the merits.

**ISSUES**

I.       Did the district court err by calculating appellant's monthly parental fee under Minn. Stat. § 260C.331, subd. 1, instead of Minn. Stat. § 252.27?

II.      Did the district court err by declining to address appellant's argument that she should have received a child support offset against her share of the costs of the out-of-home placements?

III.     Should this court strike a letter from the county in appellant's addendum that purportedly contains confidential settlement negotiations?

**ANALYSIS**

**I.**

Appellant argues that the district court erred by calculating her monthly parental fee under section 260C.331, subdivision 1, instead of section 252.27. Statutory interpretation presents a question of law, which we review de novo. *Weston v. McWilliams & Assocs., Inc.*, 716 N.W.2d 634, 638 (Minn. 2006). "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2014).

> The first step in statutory interpretation is to determine whether the statute's language, on its face, is ambiguous. In determining whether a statute is ambiguous, we will construe the statute's words and phrases according to their plain and ordinary meaning. A statute is only ambiguous if its language is subject to more than one reasonable interpretation. . . . When we conclude that a statute is unambiguous, our role is to enforce the language of the statute and not explore the spirit or purpose of the law. Alternatively, if we conclude that the language in a statute is ambiguous, then we may consider the factors set forth by the [l]egislature for interpreting a statute.

*Christianson v. Henke*, 831 N.W.2d 532, 536–37 (Minn. 2013) (quotations and citations omitted).

There are two statutes for calculating parental fees in a child protection proceeding. The first statute provides:

> Whenever any child who has a developmental disability, or a physical disability or emotional disturbance is in 24-hour care outside the home including respite care, *in a facility licensed by the commissioner of human services*, the cost of services shall be paid by the county of financial responsibility determined pursuant to chapter 256G.

Minn. Stat. § 252.27, subd. 1 (2014) (emphasis added). "Responsibility of the parents for the cost of services shall be based upon ability to pay." *Id.*, subd. 2 (2014). Parents are required to contribute to the cost of the child's out-of-home placement "by making monthly payments on a sliding scale based on income." *Id.*, subd. 2a(a) (Supp. 2015). Appellant claims that under this statute, she would not have to pay anything toward the costs of J.F.'s out-of-home placements.

The second statute provides that when a child is in court-ordered, out-of-home placement, *and no other parental fee statute applies*, the cost of that placement is "a charge upon the welfare funds of the county in which proceedings are held." Minn. Stat. § 260C.331, subd. 1(a). Under this statute, parents are required to use their "income and resources attributable to the child," including child support, "to reimburse the county for the cost of care." *Id.*, subd. 1(b). "If the income and resources attributable to the child are not enough to reimburse the county for the full cost of the care," then the parents must contribute to those costs based on their ability to support the child, and the district court

6

"shall" set a contribution amount based on a fee schedule developed by the responsible social services agency. *Id.*, subd. 1(c).

Appellant argues that section 252.27, not section 260C.331, governs the calculation of her parental fee for J.F.'s out-of-home placements and that we should interpret section 252.27 to include not only facilities licensed by DHS, but also facilities licensed by DOC that associate with other entities providing services licensed by DHS. We are not persuaded.

Section 252.27 is unambiguous and susceptible to only one reasonable interpretation: its parental fee calculation applies only if (1) the child "has a developmental disability, or a physical disability or emotional disturbance"; (2) the child "is in 24-hour care outside the home"; and (3) the child is "in a facility licensed by the commissioner of human services." Minn. Stat. § 252.27, subd. 1. Section 260C.331, subdivision 1, is also unambiguous and susceptible to only one reasonable interpretation: if the child is in court-ordered, out-of-home placement, and no other parental fee statute applies, parents are required "to reimburse the county for the cost of care" based on a fee schedule developed by the responsible social services agency. Minn. Stat. § 260C.331, subd. 1(a)–(c).

There is no dispute that from December 9, 2013, to May 31, 2015, J.F. was in 24-hour care outside the home because she had an emotional disturbance. At the May 13, 2015 evidentiary hearing, the county presented evidence that all three facilities—SC-JAF, Heartland-Main, and Heartland-Strides—were licensed by DOC, not DHS. Appellant did not rebut this evidence. In construing a clear and unambiguous statute, a reviewing court cannot read into the statutory text a provision that is not already there. *Premier Bank v.*

*Becker Dev., LLC*, 785 N.W.2d 753, 760 (Minn. 2010); *see also* Minn. Stat. § 645.16 (instructing that if the language of a statute is plain and unambiguous, "the letter of the law shall not be disregarded under the pretext of pursuing the spirit"). Appellant's construction of section 252.27 would require this court to ignore the statute's plain and unambiguous language and insert a provision expanding the application of the statute beyond its plain meaning. Such a reading would violate these canons of construction and contravene the legislature's intent in limiting the application of section 252.27 to facilities licensed by DHS. Accordingly, the district court correctly concluded that section 252.27 did not apply and that appellant's parental fee must be calculated under section 260C.331, subdivision 1, and the county's associated fee schedule.

Appellant appears to argue that the district court erred by ordering J.F.'s out-of-home placements without considering the potential financial impact of such placements on her parents. Under chapter 260C, juvenile courts, in determining what is in the child's best interests when placing the child outside the home, are not required to consider the financial implications for the parents. *See* Minn. Stat. § 260C.212, subd. 2 (Supp. 2015) (listing numerous child-centered factors that child-placing agency must consider to determine needs of child in order to ensure out-of-home placement is in child's best interests); *cf.* Minn. Stat. § 260C.511 (Supp. 2015) (defining "best interests of the child," for purposes of permanency and termination of parental rights proceedings, as "all relevant factors to be considered and evaluated"). Appellant does not cite any statutory or caselaw authority mandating that district courts consider the parents' financial interests when making out-of-home placement decisions. And, because this court is an error-correcting court, *Sefkow v.*

*Sefkow*, 427 N.W.2d 203, 210 (Minn. 1988), we cannot impose such a burden on the district court in the absence of authority mandating such consideration, *see Tereault v. Palmer*, 413 N.W.2d 283, 286 (Minn. App. 1987) ("[T]he task of extending existing law falls to the supreme court or the legislature, but it does not fall to this court."), *review denied* (Minn. Dec. 18, 1987); *cf. In re Welfare of J.M.*, 574 N.W.2d 717, 722–24 (Minn. 1998) (holding that district court, in determining child's best interests, did not err by failing to make findings on consideration *not* included as factor in different best interests statute). In any event, to the extent that appellant's financial interest might have conflicted with the best interests of J.F., the best interests of J.F. would have controlled.

Appellant appears to argue, again without citation to any controlling authority, that district courts are required to place children with emotional disturbances only at facilities licensed by DHS. Because appellant fails to cite any authority for this proposition, her argument is waived. *See In re Estate of Rutt*, 824 N.W.2d 641, 648 (Minn. App. 2012), *review denied* (Minn. Jan. 29, 2013). We reiterate that a district court's out-of-home placement decision is driven by the best interests of the child and, in a given case, it may be appropriate to place the child in a facility licensed by DHS or a facility licensed by DOC, depending on the child's needs. *See* Minn. Stat. § 260C.212, subd. 2.

According to its plain language, section 252.27 applies only when a child with an emotional disturbance is placed in 24-hour care outside the home in a facility licensed by DHS. All of the facilities at issue here were licensed solely by DOC. Based upon the clear language of the statute and the absence of any authority mandating the consideration of the financial interests of the parents, we conclude that the district court did not err by placing

J.F. in facilities licensed by DOC and by calculating appellant's monthly parental fee under section 260C.331, subdivision 1, and the county's associated fee schedule. Appellant does not challenge the county's calculation of *the amount* of her parental fee under this schedule.

## II.

Appellant next argues that the district court erred by not addressing in its order her argument that she is entitled to an offset against her parental fee for father's child support payments that the district court assigned to the county. We conclude, however, that the district court implicitly considered and rejected this argument because the district court stated that appellant's parental fee, as calculated under section 260C.331, subdivision 1, and the county's associated fee schedule, is essentially the amount that *she* would be required to pay for ongoing basic support under the child support guidelines.

In any event, there is no merit to appellant's offset argument. Section 260C.331 provides that when legal custody has been transferred to the responsible social services agency, parents must use their "income and resources attributable to the child," including child support, "to reimburse the county for the cost of care." Minn. Stat. § 260C.331, subd. 1(b). The district court accordingly assigned father's child support obligation to the county. Because child support is income attributable to the child, not income attributable to the child support obligee, appellant was not entitled to offset her parental fee by an amount equal to father's child support payments. We note that both appellant's and father's parental fee obligations cover only a small percentage of the entire amount expended by the county for J.F.'s care, which was in excess of $85,000 as of March 31, 2015.

10

### III.

After this appeal was filed, the county moved to strike a letter in appellant's addendum on the ground that the letter contains confidential settlement negotiations regarding the current dispute. This letter was not filed with the district court and therefore is not part of the record on appeal. *See* Minn. R. Civ. App. P. 110.01 ("The documents filed in the trial court, the exhibits, and the transcript of the proceedings, if any, shall constitute the record on appeal in all cases."). We may not base our decision on matters that were not received into evidence by the district court and that are outside the record on appeal. *Thiele v. Stich*, 425 N.W.2d 580, 582–83 (Minn. 1988). Because we are affirming the district court's decision solely based on the record on appeal, we grant the county's motion.

### D E C I S I O N

Because the parental fee for costs associated with a court-ordered 24-hour out-of-home placement of a child who has an emotional disturbance is governed by section 252.27 only if the child is placed in a facility licensed by DHS, and because J.F. was placed in facilities licensed solely by DOC, the district court did not err by calculating appellant's monthly parental fee under section 260C.331, subdivision 1. Appellant's contention that the district court erred by not addressing her argument that she is entitled to an offset for father's child support payments is without merit.

**Affirmed; motion granted.**